OPINION OF THE COURT
Stanley L. Sklar, J.
On January 3, 1999, decedent Kendra Webdale met her death when she was pushed in front of an oncoming subway train by Andrew Goldstein, a person with a lengthy history as a paranoid schizophrenic. Goldstein is presently serving 25 years to life for his act. Plaintiff, Kendra’s mother and the administratrix of her estate, brings this action against the numerous institutions which treated Goldstein over the years for his severe psychiatric problems.
In the present motion, plaintiff seeks, pursuant to CPLR 3104 (d), the rejection of the latest in a long series of decisions made by Special Referee Marilyn Dershowitz in which she refused to allow plaintiff to obtain Goldstein’s medical and psychiatric records held by the various defendants. The entirety of the Referee’s decisions need not be set forth here, as they are many. Defendants Bleuler Psychotherapy Center and Brookdale University Hospital and Medical Center cross-move to affirm the decision, and for a protective order as to the records pertaining to Goldstein held in their keeping.
In a decision dated January 5, 2004, I confirmed a decision of the Referee, dated November 18, 2002, in which the Referee once again denied plaintiff both the release of the records and the deposition of Goldstein. In confirming the Referee’s decision, I determined that the Referee was correct in finding that *949 “a patient’s medical or psychiatric records are not available in discovery in the absence of an affirmative waiver of patient confidentiality” under CPLR 4504 (plaintiffs notice of motion, exhibit B, Jan. 5, 2004 decision, at 6 [January 5, 2004 decision]), and that Goldstein, a nonparty to this action, had not put his mental or psychiatric condition into issue in this action. The Referee was also deemed to be correct in finding that release of Goldstein’s records was not warranted under Mental Hygiene Law § 33.13, as the “interests of justice” did not “significantly outweigh the need for confidentiality” in this case. (Mental Hygiene Law § 33.13 [c] [1].)
Significant to this present motion are the issues which I declined to address in the January 5, 2004 decision, because they were raised by the plaintiff for the first time before the Referee in plaintiffs reply papers. The issues were: (1) whether Goldstein’s use of his psychiatric and medical records in his criminal trial acted as a waiver of his right to confidentiality in the present trial, despite CPLR 4504, and (2) whether plaintiff was entitled to depose Goldstein on the specific issue of whether he has “relevant information concerning his actions up to and including the time that he pushed the decedent in front of the moving train, which goes to the issue of damages insofar as her fear of impending death and/or conscious pain and suffering.” (January 5, 2004 decision at 10.)
In February 2004, following this court’s January 5, 2004 decision, plaintiff once more made a discovery motion before the Referee, seeking this time to obtain (1) an order compelling the production of Goldstein’s medical and psychiatric records, on the ground that he had waived any right to confidentiality by placing the records in evidence in his criminal trial; (2) an order, in the alternative, allowing the records to be examined in camera by the Referee, followed by an order permitting the production of all nonconfidential material found therein; (3) an order compelling Goldstein’s deposition, pursuant to CPLR 3106 (c); and (4) firm dates for the depositions of Goldstein and the defendants.
In her July 26, 2004 decision, the Referee denied all of plaintiffs requests. The Referee opined that the motion should have been brought as one for renewal or reargument, which had not been the case, and that the plaintiff was raising arguments that could have, and should have, been raised in the many prior applications for the same relief. Nevertheless, the Referee discussed plaintiffs reliance on the unreported case, Rivera v *950 New York City Health & Hosps. Corp. (Index Nos. 00 Civ 5279, 01 Civ 2838 [US Dist Ct, SD NY 2002]), to support her argument that Goldstein has waived his right to confidentiality. The Referee found Rivera distinguishable and not applicable law in this state.
The Referee further found that “it is law of the case that the interests of justice do not outweigh the need for confidentiality or the privilege of the patient” under Mental Hygiene Law § 33.13. (Notice of motion, exhibit A, Referee’s July 26, 2004 decision, at 4.) The Referee, under the impression, now contested, that Goldstein had not been notified of the latest demand for a deposition, also denied the deposition of Goldstein. The Referee did not address plaintiffs request for an in camera inspection. In summary, the Referee granted defendants a protective order “precluding any further prayers for relief.” (Id.)
The applications made in the present motion, which requests that this court reject the Referee’s July 26, 2004 decision, mirror those made in the motion before the Referee. This time the court is squarely faced with the question of whether the alleged use of Goldstein’s medical and psychiatric records in his criminal trial, and in his briefs on appeal, constitute a waiver of his right to confidentiality under CPLR 4504 in the present civil action, in which he is not even a party. I find that Goldstein has waived his privilege, and that the records are discoverable in the present proceeding.
Initially, the reviewability of the Referee’s decision must be addressed. As the present motion is allegedly based on the “new” information contained in the appellate briefs in Gold-stein’s criminal case, in which the parties’ experts discuss the contents of the various medical and psychiatric records, defendants argue that their motion is one for renewal.
Under CPLR 2221 (e) (2), a motion for renewal must “be based upon new facts not offered on the prior motion that would change the prior determination.” Pursuant to CPLR 2221 (e) (3), the motion “shall contain reasonable justification for the failure to present such facts on the prior motion.”
As defendants point out, the appellate briefs on which plaintiff bases her argument were available in at least 2003, prior to the July 26, 2004 decision of the Referee. However, courts have wide discretion to address motions to renew “in the interest of justice.” (Mejia v Nanni, 307 AD2d 870, 871 [1st Dept 2003]; see also Matter of Dier, 13 AD3d 150 [1st Dept 2004]; Abax, Inc. v Lehrer McGovern Bovis, Inc., 8 AD3d 92 [1st Dept 2004].) *951 Therefore, renewal is appropriate, in the interests of justice, and I will address the issues.
CPLR 4504 (a) states that:
“Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
Further, Mental Hygiene Law § 33.13 (c) provides, with regard to the clinical records maintained by licensed facilities, that:
“Such information about patients or clients reported to the offices, including the identification of patients or clients, and clinical records or clinical information tending to identify patients or client, at office facilities shall not be a public record and shall not be released by the offices or its facilities to any person or agency outside of the offices except as follows:
“1. pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality . . . .”
It has already been established, by the Referee and this court, that Goldstein has not agreed to waive his privilege with regard to the present action. It has also been established that, absent a waiver, the needs of justice do not “significantly outweigh the need for confidentiality.” (Id.) Therefore, plaintiff must show this court that the briefs submitted by the parties on the appeal of Goldstein’s criminal trial establish that Goldstein has waived any right to confidentiality he may have had under CPLR 4504 and the Mental Hygiene Law in this civil action.
As the Referee notes in her July 26, 2004 decision, plaintiff has never actually established that any of Goldstein’s records were placed into evidence at his criminal trial. However, plaintiff now produces the part of the parties’ appellate briefs wherein the parties recap Goldstein’s psychiatric history, culled, apparently, from Goldstein’s medical and psychiatric records. Thus, plaintiff maintains that Goldstein’s medical and psychiatric history was made a part of Goldstein’s trial by Goldstein, and that the production of his medical and psychiatric history consti *952 tuted a waiver of Goldstein’s privilege to keep his records confidential in further trials.
Plaintiff further argues that this alleged waiver “tips the balance of the qualified privilege afforded him under § 33.13 of the Mental Hygiene Law in favor of plaintiff in this litigation and disclosure of the records is ‘in the interests of justice.’ ” (Affirmation of Dankner at 7.) Plaintiff admits that this basis for production of Goldstein’s records “has not been before this Court.” (Id.)
In Rivera v New York City Health & Hosps. Corp. (Index Nos. 00 Civ 5279, 01 Civ 2838, supra), the United States District Court for the Southern District of New York was faced with a case factually similar to the one at hand. In Rivera, the plaintiff sought to obtain from the defendant hospital corporation the medical records of Julio Perez, the person who had pushed the plaintiff Rivera in front of a moving subway car. As in the present action, Perez was not a party to the Rivera action. Perez, like Goldstein, had raised an insanity defense in his criminal trial.
The court in Rivera referenced New York law, which states that “when a patient puts in issue the condition for which he was examined by a physician he waives the privilege to the extent of permitting the physician to testify as to the facts upon which his opinion is based” (People v Wilkins, 65 NY2d 172, 176 [1985], citing People v Edney, 39 NY2d 620 [1976]). The Rivera court reasoned that, because Perez’s lawyer had discussed his psychiatric history in Perez’s criminal action, and because both sides had produced experts to discuss Perez’s condition, Perez had “put[ ] his mental health into issue during his criminal trial,” and had, as a result, “waived any physician-client privilege.” (Rivera, slip op at 2.) However, the court in Rivera also relied on the fact that “Perez’s lawyer in the state court case entered into a stipulation with plaintiffs counsel allowing him access to mental health records” (id.), a situation which did not occur in Goldstein’s criminal trial.
In finding that Rivera had waived his privilege under CPLR 4504 in the civil trial as a result of the waiver made in his criminal trial, the court in Rivera failed to base its decision to extend the waiver on any case law directly related to the present question. However, the issue has been directly addressed, and resolved, by the Court of Appeals.
In People v Bloom (193 NY 1 [1908]), the Court was faced with a fact pattern analogous to the one at hand. Bloom com *953 menced a civil action against the Metropolitan Street Railroad Company, claiming that he had sustained serious injuries as a result of the railroad’s negligence. At the trial of the civil action, the railroad called as expert witnesses four of Bloom’s own treating physicians, who testified, without objection from Bloom, that his injuries predated the alleged accident.
After the civil trial ended in favor of the railroad, Bloom was indicted for perjury, based on the allegedly false testimony he gave in his civil trial. The criminal court, over the objections of Bloom, found that the evidence offered again by the four physicians was not prohibited by the physician/patient relationship under sections 834 and 836 of the Code of Civil Procedure, the statutes predating CPLR 4504, because Bloom had waived any privilege he might have had.
The Court in Bloom, referring to section 834, stated that:
“Whether [Bloom’s] failure to object [to the physician’s testimony] was owing to inadvertence, or policy, or to some other reason, does not appear, and is not now material. It is conceded that [Bloom] waived the benefit of section 834 so far as the trial of the civil action was concerned, and the real question is, what effect did that waiver have upon subsequent trials, civil or criminal?” (Bloom at 5.)
The intent of section 836 of the Code of Civil Procedure, as now codified in CPLR 4505, has not altered in more than a century. Section 836 refers first to section 834, which states that “[a] person duly authorized to practice physic or surgery, or a professional or registered nurse, shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity.” Section 836 states that “[t]he last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client.” These words have been carried down to the present time, essentially unchanged.
The Court in Bloom, quoting its decision in McKinney v Grand St., Prospect Park & Flatbush R.R. (104 NY 352, 354 [1887]), opined that:
“The intent of the statute, in making such information privileged, is to inspire confidence between patient and physician, to enable the latter to prescribe for and advise the former most advanta *954 geously, and remove from the patient’s mind any fear that she may be exposed to civil or criminal prosecution, or shame and disgrace, by reason of any disclosure thus made.” {Bloom at 8.)
These concerns continue today to support the statute in its current form. (See Dillenbeck v Hess, 73 NY2d 278 [1989].) For instance, in Dillenbeck, the Court reiterated that “[w]e have previously noted that this State’s codification of the physician-patient privilege was based largely ‘on the belief that fear of embarrassment or disgrace flowing from disclosure of communications made to a physician would deter people from seeking medical help and securing adequate diagnosis and treatment’.” {Id. at 285 [citations omitted]; see also Matter of Grand Jury Investigation in N.Y. County, 98 NY2d 525 [2002].) Another reason offered by the Court in Dillenbeck was the “need to protect the privacy expectations of patients.” (Dillenbeck at 285; see also Matter of Grand Jury Investigation in N.Y. County, 98 NY2d 525, supra [2002].)
The Court in Bloom, fully cognizant of the protections afforded by section 834 of the Code of Civil Procedure, nevertheless recognized that the privilege could be waived under section 836. The Court further reasoned that the waiver of the privilege in one trial carried over to a later trial involving the party who had waived the right to confidentiality as follows:
“The nature of the information is of such a character that when it is once divulged in legal proceedings, it cannot be again hidden or concealed. It is then open to the consideration of the entire public, and the privilege of forbidding its repetition is not conferred by the statute. The consent having been once given and acted upon cannot be recalled, and the patient can never be restored to the condition which the statute, from motives of public policy, has sought to protect.” {Bloom at 8.)
The statute’s purpose has been “voluntarily defeated by the party for whose benefit it was enacted” {id.), leaving “nothing left to protect against.” {Id. at 10.) Disclosure cannot be protected because “[t]here can be no disclosure of that which is already known, for when a secret is out it is out for all time and cannot be caught again like a bird and put back in its cage.” (Id.; see also McKinney v Grand St., Prospect Park & Flatbush R.R., 104 NY 352 [1887], supra.)
The obvious difference between the facts in Bloom and the situation here presented is that Goldstein is not a party to the *955 instant action, although, presumably, he could have been made so. Regardless, Bloom specifies that the waiving party’s privileged information is “open to the consideration of the entire public” (Bloom at 76), which strongly implies that a nonparty waives his privilege to the same extent as a party, that is, for all purposes. And, to the extent that defendants suggest that Gold-stein’s actual records were never made a part of his trial, “the form in which the information is sought to be introduced is irrelevant, as the privilege operates whether the information is contained in a patient’s medical files or is sought to be introduced at trial in the form of expert testimony.” (Dillenbeck v Hess, 73 NY2d at 284.) Conversely, it does not matter what form in which the privileged information is divulged. Even the language of section 836 of the Code of Civil Procedure allowed for waiver in more than one form. (See McKinney v Grand St., Prospect Park & Flatbush R.R. Co., 104 NY 352 [1887], supra.)
Because Goldstein relied on his medical and psychiatric history to defend himself in his criminal trial, he opened up that information to the public, and so waived his physician-client privilege as to the records held by defendants, pursuant to CPLR 4504. As a result of the waiver, disclosure of Goldstein’s records is also permissible under Mental Hygiene Law § 33.13 (c) (1), in that Goldstein has forfeited his “need for confidentiality” by his waiver in the criminal action. Thus, the needs of the plaintiff in this civil suit necessarily outweigh the need for confidentiality. (See Matter of Goohya v Walsh-Tozer, 292 AD2d 384, 385 [2d Dept 2002] [“ ‘(t)he confidentiality accorded the hospital records of mental patients by the Mental Hygiene Law is not absolute. In a proper case, it must yield to the needs of justice’ ” (citation omitted)].)
Defendants raise the federal Health Insurance Portability and Accountability Act of 1996 (Pub L 104-191, 110 US Stat 1936 [1996] [HIPAA]), as a possible bar to the release of Goldstein’s records. HIPAA was enacted to protect the privacy of health information “in the midst of the rapid evolution of health information systems.” (South Carolina Med. Assn. v Thompson, 327 F3d 346, 348 [4th Cir 2003].) However, the regulations promulgated by the Secretary of Health and Human Services pursuant to HIPAA permit disclosures in a judicial proceeding “[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order” (45 CFR 164.512 [e] [1] [i]). Under the circumstances, HIPAA does *956 not prohibit disclosure of Goldstein’s complete medical and psychiatric records.
As a result of the finding that Goldstein waived his physician-patient privilege, plaintiff must now be afforded access to the nonmedical information, such as records reflecting payment or charges, which were previously denied her on the basis that they, too, might reveal confidential information. Plaintiff is also entitled to obtain any nonmedical information concerning any violent behavior or assaults in which Goldstein might have been involved. (See Friend v SDTC-Center for Discovery, Inc., 13 AD3d 827 [3d Dept 2004].) Further, in light of Goldstein’s waiver, there is no need for an in camera review of the records in order to cull therefrom any nonmedical information, as would otherwise be the proper procedure. (See Sohan v Long Is. Coll. Hosp., 282 AD2d 597 [2d Dept 2001].)
The Referee, in her July 26, 2004 decision, based her denial of plaintiffs request for Goldstein’s deposition on, among other things, the fact that he had not received notice of a deposition. Although there apparently was disagreement as to whether Goldstein has been properly noticed for a deposition, it appears that defendants now agree that he was, and, in any event, in light of the following, he still yet may be.
The deposition of a nonparty will be allowed where that party’s testimony is “material' and necessary to the prosecution of the action.” (See Acosta v Hadjigavriel, 6 AD3d 636, 637 [2d Dept 2004].) Goldstein was, apparently, the last person, or at least the closest person, to Kendra before he pushed her in front of the subway train. As such, it may be that he can offer testimony as to what happened prior to and after his actions. The requirement which the Referee used in rejecting plaintiffs request for Goldstein’s deposition, that there be “special circumstances” requiring his testimony, no longer applies. (Schroder v Consolidated Edison Co. of N.Y., 249 AD2d 69 [1st Dept 1998].)
There is no impediment to the deposition of Goldstein as a nonparty. “The deposition of a person confined under legal process may be taken only by leave of the court.” (CPLR 3106 [c].) Where the deposition of a nonparty is sought, a subpoena must be served upon such person, and the subpoena must be served at least 20 days before the examination is sought, unless the court orders otherwise. (CPLR 3106 [b].) Therefore, Goldstein’s deposition is appropriate, and is permissible. Furthermore, the requirements of HIPAA have been met since his Legal Aid *957 counsel was given notice of this application. (45 CFR 164.512 [e].)
In light of this decision in its entirety, the Referee’s holding requiring the filing of a certificate of readiness and note of issue within 35 days of the date of the decision is void to provide time for Goldstein’s deposition and the receipt from defendants of Goldstein’s medical and psychiatric records.
Accordingly, it is ordered that plaintiffs motion to reject the report of the Special Referee dated July 26, 2004 is granted; and it is further ordered that the cross motions of defendants Bleuler Psychotherapy Center and Brookdale University Hospital and Medical Center to confirm the decision and for a protective order is denied; and it is further ordered that defendants are to turn over to plaintiff all of nonparty Andrew Goldstein’s medical and psychiatric records in their possession within 20 days of receipt of this decision with notice of entry; and it is further ordered that plaintiff serve Andrew Goldstein with a subpoena requiring his deposition within 20 days of the receipt of this decision with notice of entry, and Goldstein’s deposition shall be held within 30 days following service of the subpoena.